ELMER and CECILE CARSELLO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Carsello v. Commissioner
Docket No. 2315-75.
United States Tax Court
T.C. Memo 1976-193; 1976 Tax Ct. Memo LEXIS 211; 35 T.C.M. (CCH) 832; T.C.M. (RIA) 760193; June 15, 1976, Filed Elmer Carsello, pro *213 se. James F. Hanley, Jr., for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a $4,786.57 deficiency in petitioners' 1970 income taxes. There are two issues: (1) Whether Elmer Carsello (hereinafter petitioner) may deduct, as ordinary loss, $13,927.20 for certain stock which became worthless in 1970 and (2) whether petitioner may deduct, as a charitable contribution, the cost of a newspaper advertisement urging state aid for non-public schools. FINDINGS OF FACT Some facts were stipulated and are found accordingly. Petitioner and his wife, Cecile, lived in Chicago, Illinois, when they filed their 1970 income tax return with the Internal Revenue Service Center, Midwest Region, Kansas City, Missouri, and when they filed their petition in this case. Petitioner was a stock broker. On May 16, 1968, petitioner purchased 440 preferred shares of stock of his employer, Hayden, Stone, Incorporated (hereinafter Hayden, stone) for $13,928.20. On January 21, 1969, he received an additional 16 shares as a dividend. In September of 1970, Hayden, Stone was reorganized; petitioner received 456 preferred shares of *214 HS Equities, Inc., successor to Hayden, Stone, for his Hayden, Stone stock. This stock became worthless thereafter, in 1970.On his 1970 return, petitioner reported that he had sold the stock on December 31, 1970, for $1.00, taking an ordinary loss. Petitioner did not actually sell the stock but reported that he had done so to secure the loss. By 1968, when petitioner purchased the Hayden, Stone stock, the firm was financially troubled and in need of capital. Petitioner had profited handsomely from the firm, and his superiors expected him to purchase stock in return. Petitioner purchased no Hayden, Stone stock except in this one instance. His personal investments show a strong preference for highly speculative gold stock. Petitioner knew when he purchased the Hayden, Stone stock that it was a bad investment; he purchased it to protect his income. Petitioner's superiors never specifically threatened to discharge him if he did not purchase the stock. They could, however, control his level of income. That income was based, in part, upon commissions generated when petitioner sold "new issue" stock to third parties. The amount of "new issue" stock which petitioner received to sell *215 to third parties was discretionary with his superiors. Thus by controlling the amount of "new issue" stock which petitioner received for sale to third parties, petitioner's superiors ultimately controlled the amount of his commissions. During 1970 petitioner placed an advertisement in the Chicago Tribune urging state aid to non-public schools. He paid for this advertisement himself, deducting its cost as a charitable contribution to the Roman Catholic Church. Church officials were not aware of petitioner's action until the advertisement was published nor did they authorize or consent to it. ULTIMATE FINDINGS OF FACT Petitioner had a business, not an investment, motive when he purchased the Hayden, Stone stock. At no time thereafter did this motive change. OPINION The first issue is whether petitioner may deduct, as an ordinary loss, $13,927.20 for certain stock which became worthless in 1970. The law involving the issue herein is well-established. Section 165(g)(1) [1] provides that if any security which is a capital asset becomes worthless during the taxable year, the resulting loss shall be treated as a loss from the sale or exchange of a capital asset; section *216 165(g)(2) provides that the term "security" includes a share of stock in a corporation. Section 165(f) provides that losses from sales or exchanges of capital assets shall be allowed only to the extent allowed in sections 1211 and 1212. Section 1211(b) provides the limits on capital losses for individuals and section 1212(b) provides the rules for carryovers. Section 1221 defines "capital asset." Technically, petitioner's stock would come within the definition of capital asset; therefore his loss would be a capital rather than an ordinary loss and subject to capital loss treatment under sections 1211 and 1212. However, there are numerous cases [2] which recognize that stock which is technically within the statutory definition of "capital asset" had been acquired by the taxpayer for a purpose so directly connected with his trade or business that the gain or loss from its sale was ordinary gain or loss deductible under section 165(a) or an ordinary and necessary business expense deductible under section 162(a). Purchasing stock to protect one's source of income can be such a case. . *217 Cf. . Stock originally purchased for a business purpose can become a capital asset when the business motive disappears, leaving pure investment intent for continued retention. . Where a substantial investment motive exists in a predominantly business motivated acquisition of corporate stock, such stock is a capital asset. . Petitioner was a stock broker with Hayden, Stone, Incorporated. In essence, he contends that he purchased the Hayden, Stone stock to protect his income.He alleges that Hayden, Stone had fallen on hard times, that it was necessary for the corporation to raise capital, that he had profited handsomely from the firm, and that his superiors expected him to purchase stock in return. After careful consideration of the record in this case, we are convinced that petitioner purchased the Hayden, Stone stock with a business, not an investment, motive, that he retained *218 this motive until the stock became worthless, and that he should therefore be entitled to an ordinary loss. Accordingly, we hold for him on this issue. We were particularly impressed by petitioner's demeanor and credibility throughout the trial.But this is not the basis for our holding. Petitioner purchased absolutely no Hayden, Stone stock except in this one instance, and it became worthless a relatively short time thereafter. This supports his statement that he knew the stock was a bad investment and that he merely purchased it to protect his income. Furthermore, petitioner's personal investments show a strong preference for highly speculative gold stock and not for the type of stock involved herein. It is true that petitioner's superiors never specifically told him he would lose his job if he did not purchase the stock. However, in cases such as this, we must recognize the subtle, but very real, pressures which can be brought to bear. For example, petitioner's superiors could control his level of income. His income depended, in part, upon commissions generated from the sale of "new issue" stock to third parties. The amount of this stock he received for sale to third parties *219 was discretionary with his superiors. Thus his superiors, by controlling the amount of "new issue" stock he received for sale, also controlled his level of income. Given their control, we can easily understand petitioner's motive in purchasing this stock. He was protecting his income and not making an investment. The second issue is whether petitioner may deduct, as a charitable contribution under section 170, the cost of a newspaper advertisement urging state aid for non-public schools. Petitioner contends that since the Roman Catholic Church is a charitable organization and since its schools would benefit from state aid, he should be allowed a deduction for the cost of his advertisement. Section 170(c) defines "charitable contribution" as a contribution or gift to or for the use of a charitable organization.In , we indicated, however, that an alleged gift dependent upon "an action outside the knowledge or even the tacit consent of an alleged recipient" is not a gift deductible under section 170.Since the newspaper advertisement herein was placed without the knowledge or consent of church officials, the rule in *220 Doty necessarily applies. Accordingly, the cost of the advertisement is not deductible as a charitable contribution. Decision will be entered under Rule 155.
Footnotes
1. Statutory references are to the Internal Revenue Code of 1954.↩
2. For a convenient summary of many of these cases, see .↩